**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Wendy Tracy, ) | No. CIV 06-559-TUC-RCC (GEE) |
| ) | |
| Plaintiff, ) | **REPORT AND RECOMMENDATION** |
| ) | |
| vs. ) | |
| ) | |
| Michael J. Astrue, Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |
| ) | |

The plaintiff filed this action for review of the final decision of the Commissioner for Social Security[1] pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). The case has been referred to the United States Magistrate Judge pursuant to the Rules of Practice of this court.

Pending before the court is a motion for summary judgment filed by the plaintiff on February 26, 2007, and a cross-motion for summary judgment filed by the defendant on January March 26, 2007. [#8, 9][2]

The Magistrate Judge recommends that the District Court, after its independent review, grant the plaintiff's motion for summary judgment, deny the defendant's cross-motion and remand for payment of benefits. The final decision of the Commissioner is not supported by substantial evidence.

---

[1] The new Commissioner for Social Security, Michael J. Astrue, is substituted for the original defendant, Joanne B. Barnhart, pursuant to FED.R.CIV.P. 25(d)(1).

[2] Clerk's record number.

PROCEDURAL HISTORY

Tracy filed an application for social security disability insurance benefits and supplemental security income benefits alleging a disability that began on October 30, 2001, due to "Grave's disease, cardioactivity, enlarged heart, rheumatoid arthritis, anxiety, fluid in left lung and around heart." (Tr. 120, 128, 536).

The Social Security Administration (SSA) denied her application initially and again upon reconsideration. (Tr. 62-66, 71-73). Tracy requested review, and on March 8, 2004, appeared without counsel at a hearing before Administrative Law Judge (ALJ) Norman R. Buls. (Tr. 74, 56-61). The ALJ found Tracy was not disabled. (Tr. 61). Tracy appealed, and on June 4, 2004, the Appeals Council vacated the decision of the ALJ and remanded the case for further proceedings. (Tr. 95-97). The Appeals Council instructed the ALJ to supplement the record as follows: "Obtain additional evidence and clarification concerning the claimant's impairments from Raymond P. Bakotic, D.O., the claimant's treating source." *Id.* "The additional evidence should include a medical source statement about what the claimant can still do despite the impairments." *Id.*

On February 15, 2005, Tracy appeared without counsel at a second hearing before ALJ Buls. (Tr. 28-35). On October 25, 2005, the ALJ issued a second ruling again finding Tracy was not disabled. (Tr. 35). Tracy appealed the ALJ's decision and submitted to the Appeals Council new evidence including a psychological evaluation, a mental work tolerance recommendation, and a psychiatric review technique form completed by Thomas McCabe, Ph.D., and Denny Peck, Ph.D. (Tr. 9-12, 551). The Appeals Council, however, denied review making the decision of the ALJ the final decision of the Commissioner. (Tr. 9-12); 20 C.F.R. §§ 404.981, 416.1481.

Tracy then filed the instant complaint in U.S. District Court appealing the Commissioner's final decision. She filed the instant motion for summary judgment on February 26, 2007. The Commissioner filed the instant cross-motion for summary judgment on March 26, 2007. Tracy filed a combined response and reply on April 27, 2007.

<u>Claimant's Work History and Medical History</u>

Tracy was born in 1972. (Tr. 120). She has a GED and attended one year of college. (Tr. 134). In the past, she worked as a waitress, assistant manager of a restaurant, bartender, car parts driver, certified nursing assistant, cashier, and catering service worker. (Tr. 34, 129).

At the first hearing, on March 8, 2004, Tracy testified she could not work due to anxiety, pericarditis, rheumatoid arthritis, Grave's disease (an autoimmune disease resulting in thyroid disorder)[3], and degenerative joint disorder. (Tr. 614, 617). At the second hearing, on February 15, 2005, Tracy testified she had degenerative joint disease in her knees and ankles and rheumatoid arthritis in her hands, hips, knees, and ankles. (Tr. 589).

Tracy suffers from a number of chronic illnesses both physical and mental. She has Grave's disease, rheumatoid arthritis, and degenerative joint disorder in her hands and knees. (Tr. 211, 198, 216, 370, 523, 534). Grave's disease was first diagnosed in 1996, and rheumatoid arthritis was first diagnosed in 1998. (Tr. 211, 559).

In August of 2002, Tracy was hospitalized complaining of chest pain. (Tr. 198, 216, 370). She was diagnosed with pleural pericarditis possibly resulting from her underlying rheumatoid arthritis and Grave's disease. (Tr. 198, 216, 226-27, 370) *Id.* Apparently, she still suffers from chronic chest pain. (Tr. 198, 226-27).

Tracy's mental heath is not much better. She has long suffered from insomnia and anxiety/depression. (Tr. 226-27). She has been diagnosed variously with adult anti-social behavior, identity problems, adjustment disorder, cannabis dependence, and kleptomania. (Tr. 315, 491).

Raymond Bakotic, D.O., has been Tracy's treating physician since 1993. (Tr. 130). In July of 2003, he completed a medical assessment form for the Arizona General Assistance benefit program. (Tr. 261). He listed Tracy's current medical conditions as rheumatoid arthritis, pericarditis, Grave's disease, tachycardia, recurrent chest pain, and depression. *Id.* He

---

[3] <u>The Merck Manual</u>, 87 (17th ed. 1999).

- 3 -

1 asserted Tracy has a "physical or mental incapacity which prevents . . . her from performing any
2 gainful employment." *Id.*

3       On August 10, 2004, Tracy was given a mental health examination by Jill T. Caffrey,
4 Ph.D., for the disability determination services. (Tr. 364-67). Caffrey's diagnostic impression
5 was "(1) history of major depressive disorder and adjustment disorder with anxiety. She does
6 not appear to be exhibiting significant signs of either depression or anxiety at this point in time.
7 . . . (2) history of diagnosis of kleptomania apparently in remission (3) cannabis dependency,
8 purportedly in full remission." *Id.* Caffrey found no work-related mental impairments. (Tr.
9 368-69).

10       In June of 2005, Bakotic submitted a Medical Work Tolerance Recommendations form
11 in accordance with the instructions of the Appeals Council. (Tr. 96, 452-53). He opined Tracy
12 could perform sedentary or light work for 2-3 hours per day and 3 days per week. *Id.* This is
13 essentially a finding that Tracy is disabled. *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir.
14 1989) ("[T]he capability to work only a few hours per day does not constitute the ability to
15 engage in substantial gainful activity . . . ."); *See also* Social Security Ruling 96-8p (Residual
16 functional capacity is an assessment of an individual's ability to perform sustained work-related
17 physical activities in a work setting for eight hours a day, five days a week, or the equivalent
18 work schedule.).

19       In July of 2006, after the ALJ issued his second decision, Tracy was given a mental
20 health evaluation by Thomas R. McCabe, Ph.D., and Denny L. Peck, Ph.D. (Tr. 557-69). They
21 diagnosed Tracy with schizo-affective disorder, depressive disorder with anxiety, and
22 personality disorder NOS. (Tr. 564). They opined Tracy met the social security listings 12.03
23 (schizophrenic, paranoid and other psychotic disorders), 12.04 (affective disorders), 12.06
24 (anxiety-related disorders), and 12.08 (personality disorders). (Tr. 570). Accordingly, they
25 believe her mental impairment is sufficiently severe to be presumptively disabling. The
26 McCabe/Peck report was submitted to the Appeals Council with Tracy's request for review after
27 the ALJ issued his second decision on October 25, 2005. (Tr. 551-56).

28

CLAIM EVALUATION

Social Security Administration (SSA) regulations require that disability claims be evaluated pursuant to a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920; *Baxter v. Sullivan,* 923 F.2d 1391, 1395 (9th Cir. 1991). The first step requires a determination of whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If so, then the claimant is not disabled and benefits are denied. *Id.* If the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two which requires a determination of whether the claimant has a "medically severe impairment or combination of impairments." 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

In making a determination at step two, the ALJ uses medical evidence to consider whether the claimant's impairment more than minimally limits or restricts his or her "physical or mental ability to do basic work activities." *Id.* If the ALJ concludes the impairment is not severe, the claim is denied. *Id.* Upon a finding of severity, the ALJ proceeds to step three which requires a determination of whether the impairment meets or equals one of several listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); 20 C.F.R. Pt. 404, Subpt. P, App.1. If the claimant's impairment meets or equals one of the listed impairments, then the claimant is presumed to be disabled, and no further inquiry is necessary. *Ramirez v Shalala,* 8 F.3d 1449, 1452 (9th Cir. 1993). If the claimant's impairment does not meet or equal a listed impairment, evaluation proceeds to the next step.

The fourth step requires the ALJ to consider whether the claimant has sufficient residual functional capacity[4] (RFC) to perform past work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the ALJ concludes the claimant has sufficient RFC, then the claim is denied. *Id.* If the claimant cannot perform any past work due to a severe impairment, then the ALJ must move to the fifth step which requires consideration of the claimant's RFC to perform other substantial

---

[4] Residual functional capacity is defined as that which an individual can still do despite his or her limitations. 20 C.F.R. § 404.1545.

- 5 -

1 gainful work in the national economy in view of claimant's age, education, and work
2 experience. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4).

3       In determining whether the claimant retains the ability to perform other work, the ALJ
4 may refer to the Medical Vocational Guidelines ("the grids") promulgated by the SSA.
5 *Desrosiers v. Secretary of Health and Human Services,* 846 F.2d 573, 576-577 (9th Cir. 1988).
6 The grids categorize jobs according to their exertional requirements such as sedentary work,
7 light work, or medium work. *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). Based on
8 the claimant's exertional ability, age, education, and work experience, the grids determine
9 whether or not the claimant is disabled. *Id.* The grids are a valid basis for denying claims
10 where they completely and accurately describe the claimant's abilities and limitations. *Id.* at
11 1101-02. If the claimant has significant non-exertional limitations, the grids do not apply.
12 *Penny v. Sullivan,* 2 F.3d 953, 958-959 (9th Cir.1993). "Non-exertional limitations are
13 limitations that do not directly affect a claimant's strength." *Burkhart v. Bowen*, 856 F.2d 1335,
14 1340 (9th Cir.1988). Mental limitations, for example, are non-exertional. *Id.* at 1340-41. If
15 significant non-exertional limitations prevent the claimant from performing the full range of
16 work in any exertional category, the ALJ must take the testimony of a vocational expert to deny
17 the claim. *Id.* at 1341.

18
19       <u>The ALJ's Findings</u>

20       At step one of the disability analysis, the ALJ stated Tracy "may have engaged in
21 substantial gainful activity through August 2002." (Tr. 34). The ALJ, however, proceeded to
22 the next step in the disability analysis without further elaboration. *Id.* At step two, he found
23 Tracy had severe impairments: rheumatoid arthritis, Grave's disease, minimal degenerative
24 joint disease of the right knee, status post pericarditis, resolved, and costochondritis. . . ." *Id.*
25 He found no severe mental impairment. *Id.* At step three, the ALJ found Tracy's impairments
26 did not meet or equal the criteria for any impairment found in the Listing of Impairments,
27 Appendix 1, Subpart P, of 20 C.F.R., Part 404. *Id.* The ALJ then analyzed Tracy's residual
28 functional capacity. *Id.* He found she "has the residual functional capacity [to perform] the

1  physical exertion requirements of sedentary work activity . . . ." *Id.* At step four, the ALJ found
2  Tracy could not perform any of her past relevant work. *Id.* At step five, the ALJ employed the
3  grids to conclude Tracy was not disabled. (Tr. 35).

STANDARD OF REVIEW

An individual is entitled to disability benefits if he or she demonstrates, through medically acceptable clinical or laboratory standards, an inability to engage in substantial gainful activity due to a physical or mental impairment that can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). "[A] claimant will be found disabled only if the impairment is so severe that, considering age, education, and work experience, that person cannot engage in any other kind of substantial gainful work which exists in the national economy." *Penny v. Sullivan,* 2 F.3d 953, 956 (9th Cir. 1993) (*quoting Marcia v. Sullivan,* 900 F.2d 172, 174 (9th Cir. 1990)).

To establish a *prima facie* case of disability, the claimant must demonstrate an inability to perform his or her former work. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984). Once the claimant meets that burden, the Commissioner must come forward with substantial evidence establishing the claimant is not disabled. *Fife v. Heckler*, 767 F.2d 1427, 1429 (9th Cir. 1985).

The findings of the Commissioner are meant to be conclusive. 42 U.S.C. §§ 405(g), 1383(c)(3). The court may overturn the decision to deny benefits "only if it is not supported by substantial evidence or it is based on legal error." *Matney v. Sullivan,* 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted). The Commissioner's determination that a claimant is not disabled must be upheld if the Commissioner applied the proper legal standards and the record as a whole contains substantial evidence to support the decision. *Clem v. Sullivan*, 894 F.2d 328, 330 (9th Cir. 1990) (citing *Desrosiers v. Secretary*, 846 F.2d 573, 575-76 (9th Cir. 1988); *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983)). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *Winans v. Bowen,* 853 F.2d

1  643, 644 (9th Cir. 1987).  The standard is less than a "preponderance of the evidence" standard.
2  *Matney,* 981 F.2d at 1019.

3  "[I]f the evidence can support either outcome, the court may not substitute its judgment
4  for that of the ALJ."  *Matney,* 981 F.2d at 1019 (citing *Richardson,* 402 U.S. at 400).  When
5  applying the substantial evidence standard, however, the court should not mechanically accept
6  the Commissioner's findings but should review the record critically and thoroughly.  *Day v.*
7  *Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975).  Reviewing courts must consider the evidence
8  that supports as well as detracts from the Commissioner's conclusion.  *Id.*  A denial of benefits
9  will be set aside if the Commissioner fails to apply proper legal standards in weighing the
10 evidence even though the findings may be supported by substantial evidence.    *Frost v.*
11 *Barnhart*, 314 F.3d 359, 367 (9th Cir. 2002);  *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir.
12 1978).

13 In evaluating evidence to determine whether a claimant is disabled, the opinion of a
14 treating physician is entitled to great weight.  *Ramirez v. Shalala,* 8 F.3d 1449, 1453-54 (9th Cir.
15 1993).  The Commissioner may reject a treating physician's uncontradicted opinion only if he
16 sets forth clear and convincing reasons for doing so.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.
17 1995);  *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989).  If the treating physician's
18 opinion is contradicted by another doctor, the Commissioner may reject that opinion only if he
19 provides specific and legitimate reasons supported by substantial evidence in the record.  *Lester,*
20 81 F.3d at 830.  No distinction is drawn "between a medical opinion as to a physical condition
21 and a medical opinion on the ultimate issue of disability."  *Rodriguez v. Bowen*, 876 F.2d 759,
22 761 n.7 (9th Cir. 1989).

23 "The opinion of an examining physician is, in turn, entitled to greater weight than the
24 opinion of a non[-]examining physician."  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).
25 "[T]he Commissioner must provide 'clear and convincing' reasons for rejecting the
26 uncontradicted opinion of an examining physician."  *Id.*  "[T]he opinion of an examining doctor,
27 even if contradicted by another doctor, can only be rejected for specific and legitimate reasons
28 that are supported by substantial evidence in the record."  *Id.* at 830-31.

When medical reports are inconclusive, questions of credibility and resolution of conflicts in the testimony are functions solely of the Commissioner. *Magallanes,* 881 F.2d at 751 (citations omitted). The Commissioner's finding that a claimant is less than credible, however, must have some support in the record. *See Light v. Social Security Administration,* 119 F.3d 789 (9th Cir. 1997).

The ALJ need not accept the claimant's subjective testimony of disability, but if he decides to reject it, "[he] must provide specific, cogent reasons for the disbelief." *Lester,* 81 F.3d at 834. "Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Id.* "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*

DISCUSSION

The decision of the ALJ is not supported by substantial evidence. His decision to reject the opinion of Tracy's treating physician, Raymond Bakotic, D.O., is not supported by the record. (Tr. 314-20).

The opinion of a treating physician is entitled to great weight. *See Ramirez v. Shalala,* 8 F.3d 1449, 1453-54 (9th Cir. 1993). In this case, Bakotic's opinion of disability is uncontradicted.[5] Accordingly, the Commissioner may reject it only if he sets forth clear and convincing reasons for doing so. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989). This, he did not do.

The ALJ's major complaint is that Bakotic's opinion is not well supported by objective findings. While this is a legitimate concern, "[m]erely to state that a medical opinion is not supported by enough objective findings does not achieve the level of specificity our prior cases have required [to reject the opinion] even when the objective factors are listed seriatim."

---

[5] Jill T. Caffrey, Ph.D., examined Tracy on August 10, 2004, and found no mental impairments. (Tr. 368-69). She expressed no opinion as to Tracy's *physical* impairments. Accordingly, her findings do not contradict Bakotic's opinion that Tracy's combined impairments are disabling.

- 9 -

1  *Rodriguez v. Bowen*, 876 F.2d 759, 762 (9th Cir. 1989). Moreover, the ALJ's criticism implies a determination of disability must be based on objective findings. This is not so. "Disability may be proved by medically-acceptable clinical diagnoses, as well as by objective laboratory findings." *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975).

The treating physician is, of course, in the best position to make such a diagnosis. The treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989). He is uniquely positioned to observe the claimant's physical and mental condition over time. *Benton ex rel. Benton v. Barnhart*, 331, F.3d 1030, 1038 (9th Cir. 2003). Accordingly, his opinions are accorded the most deference in the social security analysis. Where, as here, there are no contrary medical opinions (at least none addressing Tracy's physical condition), the ALJ may not discount the treating physician's opinion just because it could be better supported by objective evidence.

The ALJ identifies a number of specific shortcomings in the record, but ironically they are not themselves well supported by any medical authority. For example, the ALJ notes Tracy's blood tests for antinuclear antibody (ANA) and RA factor were negative in August of 2002, November of 2003, and April of 2005. (Tr. 32). He implies these tests cast doubt on Bakotic's opinion of disability. Nothing in the record, however, states these test results are inconsistent with a diagnosis of disabling rheumatoid arthritis. While the ALJ is a legal expert in disability matters, he is not a medical expert. *See, e.g., Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975); *Dixon v. Massanari*, 270 F.3d 1171, 1177-78 (7th Cir. 2001).

The ALJ observes "[t]here is no evidence the claimant was ever prescribed or received any physical therapy for her pain, which is unusual given the nature of her complaint." (Tr. 32). Nothing in the record, however, indicates physical therapy is appropriate for a person with Tracy's medical condition.

The ALJ further notes that "Dr. Bakotic told [Tracy] . . . her thyroid is 'well controlled.'" (Tr. 31). While this is encouraging news, it does not necessarily mean that she is able to work.

- 10 -

1  *See, e.g., Fleshman v. Sullivan*, 933 F.2d 674, 676 (8th Cir. 1991) (Physician's use of the term
2  "doing well" does not mean the claimant is without pain.).

3  The ALJ was also puzzled that Tracy "has not been evaluated or treated by a
4  rheumatologist." (Tr. 31). In fact, the record contains a number of references indicating Tracy
5  was referred to a rheumatologist. (Tr. 199, 217, 523). Accordingly, her treating physicians
6  believed her arthritis was sufficiently serious to warrant consulting a specialist. The ALJ is
7  correct, however, in noting that the record contains no rheumatologist's report. It is not clear
8  whether or not Tracy was actually evaluated by a rheumatologist.

9  In his Medical Work Tolerance Recommendation, Bakotic opined Tracy could, at most,
10 work 2-3 hours, three days per week. The ALJ, however, rejected Bakotic's opinion and
11 explained his reasoning as follows:

> The [ALJ] has also carefully considered [] Dr. Bakotic's June 2005 functional assessment, but finds that it is a mere checklist without a narrative discussion or detailed analysis. He acknowledges the claimant remains capable of sitting four to six hours out of an eight-hour workday, three to four hours without interruption, but provides no explanation as to why she cannot sit for a total of six hours. Moreover, the doctor's report appears to contain inconsistencies, and his opinion is accordingly less persuasive. For example, he states the claimant would have to change positions frequently during the day from sitting to standing or walking, yet he concludes she remains capable of sitting three to four hours without interruption, as well as standing for the same length of time. He apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant. Yet, as explained elsewhere in this decision, there exists good reasons for questioning the reliability of the claimant's subjective complaints. . . .

(Tr. 33).

This "mere checklist," however, was sent to Bakotic at the behest of the Appeals Council. Accordingly, it is somewhat ironic that the Commissioner (through the ALJ) faults the doctor for submitting a form which Commissioner, himself (through the Appeals Council), sent to him. Moreover, the ALJ has a duty to develop the record. *See Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003) ("The ALJ is not a mere umpire . . . but has an independent duty to fully develop the record . . . to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts."). If he believed this form was insufficiently detailed, he

- 11 -

1 could have asked the doctor to provide supplemental information. Apparently, he chose not to
2 do so.

3       The ALJ further maintains that Bakotic's entries are inconsistent. According to the ALJ,
4 Bakotic claims Tracy "would have to change positions frequently during the day from sitting
5 to standing or walking, yet he concludes she remains capable of sitting three to four hours
6 *without interruption*. . . ." (Tr. 33) (emphasis added). In fact, Bakotic does not state Tracy
7 could sit for three to four hours without interruption. In accordance with the terminology on
8 the form, Bakotic reports that "During the above working day the claimant could STAND for
9 3-4 hours *at one time*, and 6 total hours; and could SIT for 3-4 hours *at one time* and 4-6 total
10 hours." (Tr. 452) (emphasis added). He then reports that Tracy "would have to CHANGE
11 POSITIONS FREQUENTLY during the day from sitting to standing or walking or vice versa
12 at least one per hour." (Tr. 452). The phrase "at one time" need not be interpreted as "without
13 interruption." There is nothing inherently contradictory with saying Tracy could sit for 3 hours
14 at one time as long as she could stand or walk around briefly at least once per hour. Again, if
15 the ALJ wanted further clarification, he was under a duty to develop the record.

16       The ALJ asserts Bakotic "relied quite heavily on the subjective report of symptoms and
17 limitations provided by the claimant." He does not, however, indicate why he makes this
18 assumption.

19       The ALJ also found Tracy's daily activities inconsistent with disability. He notes that
20 in August of 2004 "she was living alone and was independent in activities of daily living." (Tr.
21 32). She "reported doing all of her domestic activities, attending appointments and following
22 up on appointments." *Id.* "She related enjoying reading, watching television daily, cleaning
23 house, cooking and relaxing." (Tr. 32, 365). In fact, Tracy's level of activity is somewhat more
24 limited than the ALJ portrays.

25       At the hearing held on March of 2004, Tracy reported that on a usual day she cooks a
26 simple breakfast like scrambled eggs and then gets dressed. (Tr. 618). She lives in a bottom
27 floor apartment because she cannot climb stairs. *Id.* She cannot do her laundry alone because
28 she has difficulty carrying the laundry and "they're afraid that, you know, I could have a stroke,

or pass out, or something like that." (Tr. 618-19). She shops for groceries once a week and always has one or two people to help her. (Tr. 619). She does a lot of reading. *Id.* She used to do things with her hands such as drawing or sewing, but she cannot do those things any longer. *Id.*

This level of activity is not inconsistent with a finding of disability. *See Prince v. Bowen*, 894 F.2d 283, 286 (8th Cir.1990) ("[A]n ability to do light housecleaning does not necessarily indicate an ability to perform gainful employment."); *See also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("Several courts, including this one, have recognized that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations."). Household activities are performed intermittently rather than continuously and may be done in spite of the claimant's pain. *See Walston v. Gardner*, 381 F.2d 580, 586 (6th Cir. 1967); *See also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (The ALJ could not discount claimant's subjective testimony based on an ability to work sporadically with periods of rest.). In this case, there is no evidence Tracy's daily activities are performed with the type of persistence and pace required in the work place. Accordingly, they are not inconsistent with Bakotic's opinion of disability. *Baumgarten v. Chater*, 75 F.3d 366, 369 (8th Cir. 1996) (Isolated activities such as pulling weeds, mowing the lawn, painting a ceiling and housecleaning or grocery shopping do not indicate that a plaintiff could perform full-time competitive work.).

"Where the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, we credit that opinion as a matter of law." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). "Where we conclude that . . . a doctor's opinion should have been credited and, if credited, would have led to a finding of eligibility, we may order the payment of benefits." *Regennitter v. Commissioner*, 166 F.3d 1294, 1300 (9th Cir. 1999); *See also Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990) (remanding for payment of benefits where the Secretary did not provide adequate reasons for disregarding examining physician's opinion); *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989); *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1988).

1    In this case, the ALJ did not provide clear and convincing reasons for discounting Bakotic's opinion of disability. *See, e.g., Rodriguez v. Bowen*, 876 F.2d 759, 762 (9th Cir. 1989). His opinions should be credited as a matter of law. Crediting this evidence indicates Tracy is disabled. There remains an issue as to her disability onset date.

   Bakotic's Medical Work Tolerance Recommendation form was completed on June 6, 2005. (Tr. 453). At the bottom of the form, the following statement appears: "Effective dates of above limitations from 6-6-05 to 6-6-06." *Id.* (capitalization modified). Although this part of the form was apparently designed to allow the physician to state when the claimant first became disabled, it does not appear that Bakotic used the entry in this way. Instead, he seems to be stating how long this assessment of Tracy's condition would be valid. The court reaches this conclusion for two reasons. First, there is no reason why Tracy would be disabled on 6-6-05 and not before. This is the date Bakotic completed the form. It is not the date of an accident or hospitalization. Second, on the General Assistance benefit form, Bakotic stated Tracy was disabled earlier, on July 9, 2003. (Tr. 261). The only way to reconcile the two forms is to interpret the "6-6-05" as a medical-opinion-validity date and not as an onset date.

   Bakotic finds Tracy is disabled and has been so at least as early as July of 2003. Tracy claims her disability began on October 30, 2001, when she left her last full-time position. (Tr. 128, 129, 138, 166). This date is consistent with the medical record and Tracy's work history. It should be adopted as her onset date. *See Loza v. Apfel*, 219 F.3d 378, 394 (5th Cir. 2000) ("Factors relevant to the determination of the date of disability include the individual's declaration of the date of when the disability began, work history and available medical history."); *Swanson v. Secretary*, 763 F.2d 1061, 1066 n.2 (9th Cir. 1985) (The claimant's onset date should be adopted by the Commissioner if it is consistent with the available evidence.); *Willbanks v. Secretary*, 847 F.2d 301, 304 (6th Cir. 1988) (same).

   Remand of this case would serve no useful purpose. *See Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication."); *Holohan v. Massanari* 246 F.3d 1195, 1210 (9th Cir. 2001); *Smolen v. Chater*, 80 F.3d 1273,

- 14 -

1292 (9th Cir. 1996) ("We may direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose."); *See also* SSR 96-2p ("If a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight; i.e. it must be adopted."). A finding of disability should be entered.

RECOMMENDATION

For the foregoing reasons, the Magistrate Judge recommends that the District Court, after its independent review, grant the plaintiff's Motion for Summary Judgment, deny the defendant's Motion for Summary Judgment, and enter an order remanding the plaintiff's claim for payment of benefits. [#8, 9]

Pursuant to 28 U.S.C. § 636(b), any party may file and serve written objections within 10 days after being served with a copy of this Report and Recommendation. If objections are not timely filed, the party's right to de novo review may be waived. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc), *cert. denied*, 540 U.S. 900 (2003).

The Clerk of the Court is directed to send a copy of this Report and Recommendation to all parties.

DATED this 22nd day of June, 2007.

_____
Glenda E. Edmonds
United States Magistrate Judge